# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| E.K. and M.P., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WALT DISNEY PARKS AND RESORTS U.S., INC., <br><br> Defendant. | CASE NO. |

## CLASS ACTION COMPLAINT

Plaintiffs E.K. and M.P. (collectively, "Plaintiffs") bring this action against Defendant Walt Disney Parks And Resorts U.S., Inc. ("Disney") on behalf of themselves and all others similarly situated and complain and allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters upon information and belief, including investigation conducted by their attorneys. Accordingly, Plaintiffs allege as follows:

## I.    THE PARTIES

1. Defendant Walt Disney Parks and Resorts U.S., Inc. is a Florida corporation, whose principal place of business is in Lake Buena Vista, Florida. At all

1

relevant times, Disney has engaged in trade or commerce in Florida by offering and advertising theme park admission tickets to Florida consumers.

2. Plaintiff E.K. is an individual who resides in Palm Beach County, Florida.

3. Plaintiff M.P. is an individual who resides in Orange County, Florida.

## II.   <u>NATURE OF THE ACTION</u>

4. Disney operates multiple theme parks, including Walt Disney World in Florida, which includes EPCOT, Magic Kingdom Park, Disney's Animal Kingdom Theme Park, and Disney's Hollywood Studios.

5. For years, Disney has offered a variety of annual park passes. In 2015, Disney made changes to the annual pass program establishing four new annual passes – the Platinum Pass, Platinum Plus Pass, Gold Pass, and Silver Pass. Consumers who purchase an annual pass from Disney are entitled to visit all four Florida theme parks without additional charge for a period of one year. Upon the sale of an annual park pass, a contract is formed between Disney and the pass holder. The annual park passes are non-refundable and non-transferable.

6. The Disney Platinum Plus Pass included admission to all four Florida Disney parks and waterparks with no "Blockout Dates." The Platinum Pass included the same benefits as the Platinum Plus Pass but did not include waterpark entry. The Gold and Silver Passes have less benefits than the Platinum Pass

and Platinum Plus Pass. Most notably, the Gold Pass and the Silver Pass are subject to Blockout Dates. Blockout Dates are pre-designated days Disney closes off the parks to certain annual pass holders due to high park attendance. annual park passes that have Block Out dates will not be eligible to use their annual pass to enter the Florida Disney parks on some days of the year. The passes that do not have Blockout Dates, i.e., the Platinum Plus Pass and Platinum Pass are free to use their pass every day of the year that Disney is open, and the park has not reached maximum capacity.

7. The Platinum Pass, Platinum Plus Pass, Gold Pass, and Silver Pass also included the added benefit of "Park Hopping." Park Hopping allows a pass holder to visit two or more of Disney's Florida theme parks in a single day.[1] This is one of the most sought-after and important features for those who hold Disney annual passes because of the flexibility it provides.

8. Prior to March 15, 2020, Platinum Pass and Platinum Plus Pass holders were permitted to go to all four Florida Disney parks 365 days a year without any Blockout Dates or restrictions. All annual pass holders, prior to March 15, 2020, were also allowed unfettered Park Hopping between Disney's Florida parks within the same day. On or about March 15, 2020, the Florida Disney

---

[1]   *See* Walt Disney World, *Park Hopper Option*, https://disneyworld.disney.go.com/guest-services/park-hopper/ (last visited Oct. 6, 2020).

parks were closed due to the COVID-19 pandemic. Disney parks in the United States began to reopen in July 2020, but with a host of new restrictions.

9.  To initially control the Florida parks' capacity after the COVID-19 pandemic, Disney instituted a new reservation system prior to reopening – the "Park Pass System." Under the Park Pass System, guests are required to have a park reservation in addition to a valid admission ticket to gain entry to a Disney theme park. It was believed by the Plaintiffs and other members of the class that this reservation system would only be temporary and would end once the threat of the pandemic lessened because they had not been subjected to this system pre-pandemic. By restricting access to the park, Disney effectively unilaterally modified all Platinum Pass holders' and Platinum Plus pass holders' contracts. These pass holders were forced to reluctantly agree to the terms of this new agreement, having no meaningful alternative.

10. In addition to the Park Pass System, Disney also instituted Park Hopping restrictions. Whereas prior to the pandemic, Park Hopping was unrestricted, when the Disney parks reopened, Park Hopping was halted entirely.

11. Despite the COVID-19 pandemic nearing its end, and the State of Florida no longer mandating COVID-19 precautions, Disney has continued utilizing the restrictive park reservation system. Disney's website currently states, "[t]o enter a theme park, all Guests ages 3 and older must have a park reservation

4

in addition to valid admission for the same park on the same date (limit one park per day)."[2] At Morgan Stanley's 2022 Technology, Media, & Telecom Conference, Disney CFO Christine McCarthy stated Disney parks would not be returning to its normal, pre-pandemic capacities.[3]

12. In addition to the normal park capacity being artificially restricted, Disney has seemingly implemented a system in which only a certain amount of Platinum Pass and/or Platinum Plus Pass holders can make a reservation per day, despite the park still having availability for other types of reservations (i.e., single day passes, or reservations made by other pass holders). On some days, Platinum Pass holders and Platinum Plus Pass holders cannot make reservations to go to a Disney theme park, even though there are single day passes available for purchase. Disney appears to be unfairly favoring single ticket or multi-day ticket holders, while restricting Platinum Pass holders, in order to make a larger profit.

13. Park Hopping has also failed to return to its pre-pandemic state. In January 2021, Disney began allowing annual pass holders to begin Park Hopping.

---

[2]    Walt    Disney    World,    *Theme    Park    Reservations*, https://disneyworld.disney.go.com/experience-updates/park-reservations/    (last visited Oct. 7, 2022).
[3] Jade Mackey, *Disney May Never Return to Former Capacity to Avoid 'Parks Bursting at the Seams,' Says Executive*, WDW News Today (Mar. 7, 2022), https://wdwnt.com/2022/03/disney-may-never-return-to-former-capacity-to-avoid-parks-bursting-at-the-seams-says-executive/.

However, instead of allowing annual pass holders to Park Hop between Disney's Florida parks without restriction, annual pass holders could now only Park Hop after 2:00 p.m. each day.[4] Despite Disney resuming most of its daily activities, like its fireworks shows and parades, Disney has not restored annual pass holders full Park Hopping privileges. As a result, annual pass holders have lost hours of Park Hopping privileges on top of being restricted by the Park Pass System.

14. Disney has abused a global pandemic to take advantage of its Platinum pass holders  and Platinum Plus pass holders even after the threat of the pandemic has subsided. Disney has altered the Platinum Pass and Platinum Plus Pass terms so dramatically that they do not even resemble the original agreement bargained for by Plaintiffs. By implementation of the Park Pass System, Disney has effectively subjected Platinum Plus Passes and Platinum Passes to Blockout Dates, because the pass holders are subject to days and times in which their passes cannot be used.

15. Platinum Plus Pass holders and Platinum Pass holders had no reasonable opportunity to contest the terms. With COVID-19 pandemic, pass holders were forced to reluctantly agree to these terms, not having any meaningful

---

[4] *See* Walt Disney World, *Park Hopper Option*, https://disneyworld.disney.go.com/guest-services/park-hopper/ (last visited Oct. 6, 2020).

alternative. They could either agree to the terms or no longer use their pass. Platinum Pass holders had no way of knowing that agreeing to these terms would substantially lower the value of their pass and have long-term effects after the pandemic.

16. Disney's conduct is a predatory business practice, aimed at exploiting the customers who support it the most, its annual pass holders. Disney abused a global pandemic to take advantage of its own loyal customers and increase its revenue. A reasonable consumer would not have known that Disney's use of the Park Pass System and artificial park capacity limitations that they would effectively be subjected to Blockout Dates. This pitfall was only realized once pass holders were strictly limited as to when they could visit Disney's Florida parks.

17. Plainly put, by choosing not to honor the term "no Blockout Dates", Disney has engaged in breach of implied contract, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive trade practices. Plaintiffs have initiated this lawsuit to remedy the foregoing and to seek actual damages, punitive damages, and injunctive relief.

### III.   FACTUAL ALLEGATIONS

18. Plaintiffs are both loyal customers of Disney who have enjoyed visiting the Florida Disney parks for many years. E.K. has been an annual Pass holder

since 2010. M.P. has been an annual pass holder since around 2013–2014. During March of 2020 each Plaintiff had previously purchased and currently possessed a Platinum Pass. In addition to Plaintiffs' individual Platinum Passes they have both purchased annual passes for other family members. M.P. also had one Platinum Pass saved in her Disney account that was not set to expire until 2030.

19. Each Plaintiff has purchased Platinum Passes from Disney's website. M.P. paid approximately $633.00 for each Platinum Pass for her family and E.K. paid approximately $67.75 per month for her Platinum Pass.

20. Plaintiffs were inspired to purchase the Platinum Pass over the other annual passes offered by Disney because the Platinum Passes were not subject to Blockout Dates. According to the knowledge and belief of Plaintiffs, the phrase "blockout dates" was not defined. Plaintiffs reasonably understood this to mean that as Platinum Pass holders they would have access to the Disney theme parks 365 days a year.  To Plaintiffs, this also meant they could attend any of Disney's Florida parks when they desired, without the necessity of advance planning, and they would not be restricted as to their time of arrival, date of arrival, or days they could attend. By all accounts no Blockout Dates suggested that if Disney was open and selling tickets, the Platinum Pass holders could enter Disney's Florida parks. Plaintiffs did not understand this

to mean that they would only be able to visit the parks on a limited amount of pre-selected dates like the other annual passes offered were limited to. No date restrictions were identified to either Plaintiff when purchasing the Platinum Pass.

21. In or about late April or early May 2020, Disney modified the Plaintiffs' usage of their Platinum Passes by implementing a restrictive reservation system during the COVID-19 pandemic, the Park Pass System. This system was portrayed to Plaintiffs as a temporary safety precaution to lower the Florida parks' capacity during the pandemic. To gain entry to a Florida Disney theme park, guests needed both a ticket for entry and a reservation. However, Platinum Pass holders were also subject to further restrictions.

22. Per the modification issued by Disney in or about late April or early May 2020, Platinum Pass/Platinum Plus Pass holders were limited to three days of Park Pass reservations at one time. If a Platinum Pass/Platinum Plus Pass holder made three days of reservations during the month of May for a trip in November, the Platinum Pass/Platinum Plus Pass member would have to wait until their three days were expended in November, before making any new park reservations. This reservation limit resulted in a severe restriction on the Platinum Pass/Platinum Plus Pass holder's ability to visit the parks. A Platinum Pass/ Platinum Plus Pass holder pays for entry to the parks for a full

year but can lose months of entry by planning in advance. Disney has since increased the number of days to five, but this system is still a wholly different agreement from the originally agreed to Platinum Pass and/or Platinum Plus Pass contract.

23. M.P. and E.K.  planned a trip to Disney World in May 2020, to take place in November 2020. Disney had recently released the Park Pass System; thus, Plaintiffs were tasked with making reservations for this trip using the Park Pass System. As Platinum Pass holders, Plaintiffs were only allotted three days each of park reservations at one time. This meant that in order for Plaintiffs to make a reservation for the month of November, while currently in the month of May, they would be unable to use their Platinum Pass for nearly six months. After dozens of phone calls to Disney expressing their frustration with this, including one phone call with a thirteen-hour hold period, Disney proposed a solution that ultimately required cancelling their original reservation, which was at a reduced price, and rebooking the reservation at a price three times higher than the original reservation. Additionally, the Florida locals in their group would be charged an extra $15.00 each day. The additional fees being charged by Disney in and of itself is irrefutable proof that the changes made by Disney are simply about money, and not because of

capacity issues. The Plaintiffs' Platinum Passes were next to useless as they were not even able to use them for their trip.

24. Under the original Platinum Pass terms, Plaintiffs' reservations would have been allowed. When Plaintiffs purchased their Platinum Passes, the passes were advertised as having no Blockout Dates and were not advertised as being subject to the Park Pass System. Under the original Platinum Pass terms, pass holders had unfettered daily access to all four of Disney's Florida parks. Plaintiffs would not have been required to pay an additional fee to join their friends at the parks.

25. Plaintiff M.P. sent numerous emails to Robert Iger, Disney's CEO in 2020, but received no helpful action.

26. Plaintiffs never breached or indicated that they wished to change or modify the terms of their Platinum Passes and never assented to any modification. Plaintiffs were given no reasonable alternative to their situation and were forced to begrudgingly accept the new Park Pass System and restrictions if they wanted to use their Platinum Passes.

27. In addition to capacity limitations, Plaintiffs also experienced Blockout Dates. E.K. and her significant other attempted to schedule a trip together after the Park Pass System was implemented in 2020, but prior to November 2020. E.K.'s significant other did not have a Platinum Pass, but instead had a multi-

11

day pass. While attempting to schedule their trip, they came to the realization that E.K.'s Platinum Pass was subject to numerous Blockout Dates. This was discovered when E.K. was unable to obtain park reservations on days her significant other could, using his multi-day pass. In other words, Disney had park reservations available for many days it had blocked out to Platinum Pass holders.  Once again, if this was an issue of capacity, there would not be availability for any new reservations.  Instead, Disney is doing nothing more than taking advantage of customers who pre-paid a premium for unlimited access, by limiting these same customers' access to the parks, so Disney can charge new guests at the expense of the annual pass holders that have already pre-paid.

28. M.P. also experienced Blockout Dates, despite her status as a Platinum Pass holder. Specifically, she observed on July 3, 2021, and July 4, 2021, ticketing kiosks at the parks appeared to be selling multi-day and one day tickets even though the parks were shown to be sold out of park pass reservations online. The issue in both scenarios was not that park reservations were unavailable, or that the parks had reached its full capacity, the problem was that Disney had decided to block out otherwise available park reservations so that they were only available to new purchasers and not Platinum Pass holders.

29. At no point did Disney inform Plaintiffs, or the Class that Disney intended to create a category of "Platinum Pass reservations" (presumably a subset of "park reservations") which would be limited in quantity and subject to Disney's sole discretion and that Platinum Pass holders would be blocked out from making park reservations that were available to other customers. Plaintiffs and others reasonably understood and believed that, if Disney was taking reservations to the park, such park reservations would be open to Platinum Pass holders because their passes were not subject to Blockout Dates. At no point did Disney ever inform the Plaintiffs or the proposed class members that Disney would artificially decide whether Platinum Pass reservations would become unavailable even though park reservations were nonetheless available to others.

30. On information and belief, Disney appears to be limiting the number of reservations available to Platinum Pass holders and Platinum Plus Pass holders on any given day in order to maximize the number of single day and other passes that Disney can sell. This practice directly contradicts Disney's advertised promise that the Platinum Pass and Platinum Plus Pass would not be subject to Blockout Dates.

31. In an attempt to cover-up its own wrong-doing, Disney instituted new annual passes in September 2021 – the Pixie Dust Pass, Pirate Pass, Sorcerer Pass,

13

and Incredi-Pass.[5] The old annual pass scheme, which included the Platinum Pass, Platinum Plus Pass, Gold Pass, and Silver Pass, was or is being phased out by Disney. In fact, M.P.'s Platinum Pass that she had saved in her Disney account, which was not set to expire until 2030, was unilaterally converted by Disney to an Incredi-Pass. The Incredi-Pass, unlike the Platinum Pass, states it is subject to the restrictive park reservation system.[6]   Additionally, the Incredi-Pass does not include Disney PhotoPass, unlike the Platinum Pass, which includes Disney PhotoPass. After conversations with Disney representatives, M.P. was given the PhotoPass add-on to her Incredi-Pass at no additional charge. However, others wanting the same PhotoPass benefit with their Incredi-Pass are subject to an additional fee.[7] M.P. was forced to accept the new terms and conditions of the Incredi-Pass or forfeit use of her saved Platinum Pass altogether. Disney has halted sales of its Pirate Pass, Sorcerer Pass, and Incredi-Pass, likely due to some or all of the issues stated in this Complaint.[8]

---

[5] Arvid Bux, *Disney World Introduces New Annual Passes*, Travel to the Magic (Aug. 30, 2021), https://www.traveltothemagic.net/disney-world-introduces-new-annual-passes/ (last visited Oct. 6, 2022).

[6] Walt Disney World, Now's the Time to Become a Passholder, https://disneyworld.disney.go.com/passholder-program/benefits-of-becoming-a-passholder/#drawer-card-drawerIpass (last visited Oct. 6, 2022).

[7] *Id.*

[8] *Id.*

32. Disney unilaterally changed each Platinum Plus Pass and Platinum Pass holders' contract to resemble an agreement wholly different than what was agreed to. Disney's implementation of the Park Pass System and favoritism towards non-annual pass holders has subjected Plaintiffs to Blockout Dates. By instituting Blockout Dates, Disney has breached its implied contracts with Plaintiffs, breached its implied duty of good faith and fair dealing, and has engaged in deceptive and unfair trade practices.

## IV.   <u>JURISDICTION AND VENUE</u>

33. Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, at least one class member is a citizen of a different state from that of the Defendant, and the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs.

34. This Court has personal jurisdiction over Defendant's principal place of business is in Lake Buena Vista, Florida.

35. Venue is proper in this District pursuant to 28 U.S.C § 1391 because Defendant's principal place of business is in this District.

## V.   <u>CLASS ALLEGATIONS</u>

36. Plaintiffs bring the following allegations, as set forth below, on behalf of themselves and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of the class defined as:

> **National Class.** All persons who reside in the United States and who held a Disney Platinum Pass or Platinum Plus Pass during the years prior to filing this lawsuit who were denied entry to one or more of Disney's Florida parks as a result of the actions discussed herein.

> **Florida Sub-Class**. All Persons who reside in Florida and who held a Disney Platinum Pass or Platinum Plus Pass during the years prior to filing this lawsuit who were denied entry to one or more of Disney's Florida parks as a result of the actions discussed herein.

37. Excluded from the Nationwide Class and Subclass are Defendant, any entity which Defendant has a controlling interest, and Defendant's officers, Directors, legal representatives, successors, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and their staff.

38. The Nationwide Class and Florida Subclass are collectively referred to as the "Class" unless otherwise specified.

39. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers

16

who have been damaged by Disney's wrongful conduct as alleged herein. The precise number of Class Members and their addresses is presently unknown to Plaintiffs but may be ascertained from Disney's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

40. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a. Whether Disney breached its implied contracts with Class Members.

    b. Whether Disney has breached the implied covenant of good faith and fair dealing;

    c. In the alternative, whether Disney has been unjustly enriched as a result of the conduct complained herein.

    d. Whether Disney has violated the Florida Deceptive and Unfair Trade Practices Act.

41. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class Members' claims because, among other things, all Class Members were comparably injured through the uniform misconduct

described above and were subject to Disney's deceptive and misleading conduct.

42. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected

43. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Disney has acted or refused to act on grounds generally applicable to Plaintiffs and the Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

44. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A Class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually

litigate their claims against Disney, so it would be impracticable for Class members to individually seek redress for Disney's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CLAIMS ALLEGED

### COUNT I
**Breach of Implied Contract**
**(On Behalf of the National Class)**

45. Plaintiffs adopt and incorporate by reference the prior paragraphs as if fully set forth herein.

46. Disney currently offers/ previously offered annual park passes, including the Platinum Pass and Platinum Plus Pass, to the general public for sale. In exchange for a Platinum Pass and/or Platinum Plus Pass, Plaintiffs and the Class provided compensation to Defendant.

47. Disney advertised the Platinum Plus Pass and the Platinum Pass as having no Blockout Dates.

48. Had Plaintiffs and the Class known Defendant would subject the Platinum Plus Pass and/or Platinum Pass to Blockout Dates, they would have purchased a different pass, or not have purchased a pass at all.

49. Implied in these exchanges was a promise by Defendant to supply the Platinum Plus Pass and/or Platinum Pass with no Blockout Dates, upon receiving compensation from Plaintiffs and the Class.

50. These exchanges constituted an agreement between the Parties: Plaintiffs and the Class would provide compensation to Defendant in exchange for a Platinum Pass and/or Platinum Plus Pass with no Blockout Dates.

51. These agreements were made with Plaintiff and the Class as an inducement to doing business with Defendant.

52. It is clear from these exchanges that the Parties intended to enter into an agreement. Plaintiffs and the Class would not have provided compensation to Defendant, but for Defendant's promise to deliver Platinum Plus Passes and/or Platinum Passes with no Blockout Dates. Conversely, Defendant presumably would not have taken Plaintiffs' and the Class's money if it did not intend to provide Plaintiffs and the Class with Platinum Passes and/or Platinum Plus Passes with no Blockout Dates.

53. The Platinum Pass and the Platinum Plus Pass not being subject to Blockout Dates was a material term of the implied contract between Plaintiffs, Class

Members, and Disney. Disney recognized this was a material term of the implied contract because Disney sold the Platinum Plus Pass and the Platinum Pass for a greater dollar amount than the other annual passes Disney sold, which were subject to Blockout Dates.

54. Defendant was therefore required to deliver Platinum Plus Passes and/or Platinum Passes with no Blockout Dates to Plaintiffs and the Class upon receipt of payment.

55. Plaintiffs and the Class accepted Defendant's offer of the Platinum Pass and/or Platinum Plus Pass and fully performed their obligation(s) under the implied contract with Defendant by providing payment, among other obligations.

56. Plaintiffs and the Class would not have provided and entrusted their payments to Defendant in the absence of their implied contracts with Defendant and would have instead retained their payments from Defendant.

57. Defendant breached the implied contracts with Plaintiffs and the Class by subjecting the Platinum Pass and Platinum Plus Pass to Blockout Dates, via its restrictive park pass system, despite the Platinum Plus Pass and the Platinum Pass being advertised as having no Blockout Dates.

58. Defendant's failure to provide Platinum Plus Passes and Platinum Passes with no Blockout Dates violated the purpose of the agreement between the parties:

Plaintiff's monetary payment in exchange for the Platinum Pass and/or Platinum Plus Pass with no Blockout Dates.

59. Had Plaintiffs and the Class known their Platinum Plus Pass and/or Platinum Pass would be subject to Blockout Dates, they would have purchased a different pass for less money or not purchased a pass at all.

60. Defendant was on notice that the park pass reservation system created Blockout Dates for Platinum Pass holders and Platinum Plus Pass holders because Defendant designed/created the system and has received complaints from Plaintiffs and/or Class Members about the system.

61. Instead of providing Plaintiffs and Class Members a complete or partial refund, Defendant used Plaintiffs and the Class's money for other purposes, thereby breaching its implied contracts with Plaintiffs and Class Members.

62. As a proximate and direct result of Defendant's breaches of the implied contracts with Plaintiffs and the Class, Plaintiffs and the Class suffered the injuries described in detail in this Complaint and are entitled to damages in an amount to be proven at trial.

## COUNT II
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of the National Class)

63. Plaintiffs adopt and incorporate by reference the prior paragraphs as if fully set forth herein.

64. As described above, when Plaintiffs and Class Members purchased a Platinum Pass and/or Platinum Plus Pass, they entered into an implied contract in which Defendant agreed to provide a Platinum Pass and/or Platinum Plus Pass that was not subject to Blockout Dates.

65. These exchanges constituted an agreement between the parties: Plaintiffs and Class Members were required to provide money to Defendant in exchange for a Platinum Pass and/or Platinum Plus Pass, with no Block Out dates, to be provided by Defendant.

66. It was clear by this exchange that the Parties intended to enter into an agreement. Plaintiffs and the Class would not have provided payment to Defendant, but for the prospect of Defendant's promise of a Platinum Pass and/or Platinum Plus Pass not subject to Blockout Dates. Conversely, Defendant presumably would not have taken Plaintiffs' and Class Members' money if it did not intend to provide Plaintiff and Class Members with a Platinum Plus Pass and/or Platinum Pass that was not subject to Blockout Dates.

67. Implied in this exchange was a promise by Defendant to ensure that Plaintiffs' and the Class's Platinum Pass and/or Platinum Plus Pass would not be subject to Blockout Dates.

68. Defendant's failure to provide Platinum Passes and Platinum Plus Passes without Blockout Dates constituted a denial of Plaintiffs' and the Class's expected benefit of the implied contract between the Parties.

69. Defendant's lack of diligence in offering its Platinum Plus Passes and Platinum Passes with no Blockout Dates constituted a denial of Plaintiffs' and the Class's expected benefit of the implied contract between the Parties and evaded the spirit of the transaction between the Parties.

70. Plaintiffs and the Class did not receive the benefit of the bargain with Defendant, because the money given to Defendant was in exchange for Defendants' implied agreement to provide Plaintiffs and the Class with Platinum Plus Passes and Platinum Passes that were not subject to Blockout Dates.

71. While Defendant had some discretion as to the specifics of the Platinum Pass and the Platinum Plus Pass, this discretion was governed by an implied covenant of good faith and fair dealing.

72. Defendant breached this implied covenant when it (1) subjected Platinum Plus Pass holders and Platinum Plus Pass holders to Blockout Dates; (2) subjected the Platinum Pass and Platinum Plus Pass to the Park Reservation System; and (3) limited Park Hopping.

73. Plaintiffs and Class Members did all or substantially all of the significant things that the implied contract required – which was select the type of pass and purchase the pass.

74. Likewise, all conditions required for Defendant's performance were met.

75. Defendant's acts and omissions unfairly interfered with Plaintiffs' and Class Members right to receive the benefit of their implies contracts with Defendant.

76. Plaintiffs and the Class have been harmed by Defendant's breach of this implied covenant in the many ways described above.

77. Defendant is liable for breach of these implied covenants.

78. Plaintiffs and the Class are entitled to damages, including compensatory damages and restitution, declaratory and injunctive relief, and attorney fees, costs, and expenses, in amounts to be determined at trial.

## <u>COUNT III</u>

**Unjust Enrichment**
**(In the Alternative of Counts I & II)**
**(On Behalf of the National Class)**

79. Plaintiffs adopt and incorporate by reference the prior paragraphs as if fully set forth herein.

80. Disney has received a benefit from Plaintiffs and the Class in the form of the artificially high price of the Platinum Pass and Platinum Plus Pass, which included the value of no Blockout Dates in those prices.

81. Disney has knowingly appreciated and accepted this benefit which has resulted and continues to result in an inequity to Plaintiffs and each member of the class.

82. Disney's appreciation and acceptance of this benefit is inequitable.

83. By not refunding all or a portion of the Platinum Pass and Platinum Plus Pass fees, Disney realized the fees for these passes, but did not allow Plaintiffs and the Class to receive the benefits of their bargain. Disney unjustly retained the fees from these park passes to the detriment of the Plaintiffs and the Class, and Disney deprived Plaintiffs and the Class of their property.

84. Disney's retention of the entire pass fees for the period of time they have been utilizing the park reservation system violates principles of justice, equity, and good conscience.

85. It would be unjust and inequitable for Disney to retain the full amount of each Platinum Pass and Platinum Plus Pass because Disney did not provide Plaintiffs with what they paid for: an annual pass with no Blockout Dates.

86. As a result of Disney's unjust enrichment, Plaintiffs and each of the members of the class sustained damages in an amount to be determined at trial. Plaintiffs and each member of the Class seek full disgorgement and restitution of Disney's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## <u>COUNT IV</u>

**Violation of the Florida Deceptive and Unfair Trade Practices Act
(On Behalf of the Florida Subclass)**

87. Plaintiffs adopt and incorporate by reference the prior paragraphs as if fully set forth herein.

88. The Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") protects the consuming public from unconscionable, deceptive and unfair acts practices in the conduct of commerce or trade. Fla. Stat. § 501.202.   The provisions of FDUPTA are to be liberally construed. *Id.*

89. The Platinum Passes and Platinum Plus Passes Disney sells fall under FDUPTA's definition of "trade or commerce" because the passes are both a good and a service offered by Disney. *Id.* § 501.203(8).

90. Disney engaged in not less than the following unfair or deceptive acts or practices in the conduct of trade or commerce:

  a.  Disney deceptively marketed and sold Platinum Passes and Platinum Plus Passes as having no Blockout Dates, when in reality Disney retroactively imposed a restrictive park pass system that limits the date, time, and ability of pass holders to gain entrance to the parks.

  b.  Disney misrepresented the price of the Platinum Pass and the Platinum Plus Pass, in that Plaintiffs were led to believe that they would be able

to attend the park at any time throughout the year, when in fact, this was not true.

91. Disney used these unfair or deceptive acts or practices with the intent that Plaintiffs and each of the other members of the class would rely upon such practices.

92. In purchasing the Platinum Pass that included no Blockout Dates in the price of those tickets, Plaintiffs and each of the members in the class relied upon Disney's acts, practices and representations.

93. As a result of Disney's use or employment of the aforementioned unfair or deceptive acts or practices, Plaintiffs and each of the members of the class have sustained damages in an amount to be proved at trial.

94. Disney's conduct showed malice, evil motive, or the reckless disregard for the rights of others such that an award of punitive damages is appropriate.

## VII.   <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint, so triable.

## VIII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and collectively on behalf of the Class they seek to represent, respectfully request the following relief:

28

a. that the Court determine that this action may be maintained as a class action, certify all Plaintiffs to serve as Representative of the National Class and Florida Sub-Class;

b. That Disney's wrongful conduct alleged herein be adjudged and decreed to constitute breach of implied contract, or in the alternative, unjust enrichment;

c. that Plaintiffs and each of the members of the classes be awarded damages and, where applicable, treble, multiple, disgorgement, or other damages – with interest – according to: applicable common law and the laws of the state of Florida;

d. that Plaintiffs and each of the other members of the classes recover their costs of suit, including reasonable attorneys' fees and expenses as provided by law; and

e. that Plaintiffs and each of the other members of the classes be granted such other and further relief as the nature of the case may require or as this Court deems just and proper.

Dated: October 18, 2022                    Respectfully submitted,


                                           /s/ Gary S. Menzer
                                           Gary S. Menzer (Florida Bar No. 60386)
                                           Michael S. Hill (Florida Bar No. 37068)
                                           **MENZER & HILL P.A.**
                                           7280 W. Palmetto Pk. Rd. Ste. 301-N
                                           Boca Raton, Florida 33433
                                           T. 561.327.7207
                                           F. 561.880.8449
                                           gmenzer@menzerhill.com
                                           mhill@menzerhill.com


                                           William B. Federman*
                                           **FEDERMAN & SHERWOOD**
                                           10205 N. Pennsylvania Ave.
                                           Oklahoma City, Oklahoma 73120
                                           (405) 235-1560
                                           (405) 239-2112 (facsimile)
                                           wbf@federmanlaw.com
                                           *Pro hac vice application forthcoming*