## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| ERICA KELLY and MARILYN PAONE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WALT DISNEY PARKS AND RESORTS U.S., INC., <br><br> Defendant. | Case No: 6:22-cv-1919-RBD-DCI |

## MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT WITH PREJUDICE AND ACCOMPANYING MEMORANDUM OF LAW

Plaintiffs Erica Kelly and Marilyn Paone hold Walt Disney World Resort annual passes governed by express terms and conditions.  WDPR reserved the right to change those terms and conditions and annual passholders' park access, and, during the pandemic, it did change them to require an advance reservation to visit the parks.  Attempting to avoid those clear terms, Kelly and Paone devote much of their complaint to claims that the reservation system violated other somehow *implied* contract terms, or constituted unjust enrichment, or violated consumer protection law, by imposing "blockout dates" on their passes.  But these contractually permissible changes did no such thing.

For that very reason, Kelly and Paone's prior pleadings resisted making any mention of the parties' express agreement.  Kelly and Paone have now amended

their complaint to finally acknowledge the parties' written contract.  They did so only after WDPR's motion to dismiss explained that their failure to address WDPR's express terms and conditions foreclosed their other claims.  But Kelly and Paone cannot revive their complaint by now doing what they knew at the outset would be legally fatal—shoehorning a new, ill-fitting claim for breach of express contract into their complaint.  The reason is simple:  The express agreement that in fact governs the parties' relationship contains nothing to bar WDPR from implementing its reservation-based park admission system.  Indeed, it expressly permits WDPR to modify, at will, the terms governing park access.

Kelly and Paone claim to have been holders of annual passes to visit the Walt Disney World Resort theme parks since 2010 and 2013-2014, respectively.  As of March 2020, they each had a Platinum Pass, a top tier annual pass offered since 2015.  The governing terms and conditions provided that "[p]arks, attractions or entertainment may ... change or be discontinued without notice and without liability" and that the terms and conditions were "subject to change."  By Kelly and Paone's own admission, the website where they purchased their passes likewise warned them that pass entitlements were "subject to change without notice."

In March 2020, the pandemic hit.  Walt Disney World closed.  The parks reopened in July 2020, under government-mandated capacity limits.  To comply with them, WDPR adopted a reservation system requiring all guests, including annual passholders, to have a reservation to visit as well as a ticket or pass.

WDPR took extraordinary measures to accommodate its annual passholders in this transition.  For passes paid in full (like Paone claims hers was), passholders had the option to request a pro-rata refund for the closure period; otherwise, WDPR extended their passes that amount of time.  WDPR also suspended monthly payments for passholders on installment contracts.  It then previewed the parks to annual passholders before opening to the general public, letting them experience firsthand the new reservation system and safety measures (i.e., how the new terms and conditions, updated June 2020, would operate).  It then notified them that, if they wanted to opt out of their passes, they had until August 11, 2020, to do so.  If passholders opted out, they received a prorated refund (meaning they got the exploratory period from mid-July to mid-August for free).  WDPR then offered an opt-out grace period from August 12 to September 2, 2020, when it continued to process opt-outs and refunds going back to March 14; and as yet a further accommodation, from September 3 to December 8, 2020, WDPR continued to grant opt-outs and refunds for passholders' remaining access period.

When the pandemic demanded these changes, Kelly and Paone remained passholders, choosing not to opt-out.  They kept their annual passes and, indeed, renewed—under the reservation system—in 2021 and again in 2022.

Two and a half years passed from when the parks reopened.  Then, in October 2022, Kelly and Paone sued WDPR.  Their fundamental contention is that WDPR has "altered the Platinum Pass terms so dramatically" that "they do not

even resemble the original agreement bargained for by Plaintiffs." Compl. ¶ 17. They claim that they had an "implied contract" with WDPR that their passes would have "no blockout dates" and that the reservation system breached this implied obligation and the implied covenant of good faith and fair dealing, violated the Florida Deceptive and Unfair Trade Practices Act, and unjustly enriched WDPR. Compl. ¶¶ 20, 56-131. With their most recent amendments, they now also allege, in the alternative to their implied contract claim, that WDPR breached an express contract that likewise promised them "no blockout dates." Compl. ¶¶ 77-95. Kelly and Paone omitted from their complaint everything that WDPR did for annual passholders during the transition to the reservation system—including, notably, giving every passholder the chance to opt-out and be refunded.

Even with those calculated omissions, on the allegations in the complaint alone Kelly and Paone fail to state a claim. They had no implied contracts with WDPR; instead, they had an express contract specifically providing that parks, attractions, or entertainment may change or be discontinued without notice and without liability, and that the terms and conditions governing their passes were subject to change. Kelly and Paone's effort to revise the clear terms of that contract by gesturing at marketing copy on WDPR's website lacks any legal basis. In any event, that very same website expressly informs users of WDPR's right to make changes to its pass entitlements at any time. Finally, changing the terms of Kelly and Paone's annual passes' park access due to a pandemic, after expressly

4

reserving the right to do so, is not plausible bad faith, injustice, or an unfair business practice.  Their complaint should be dismissed.

## FACTUAL BACKGROUND[1]

### A.    WDPR's Annual Pass Program

In 2015, WDPR began offering four tiers of annual passes to its theme parks in Florida:  the Platinum Pass, the Platinum Plus Pass, the Gold Pass, and the Silver Pass.  Compl. ¶ 5.  All pass tiers allowed passholders to visit WDPR's theme parks in Florida for a period of one year.  Compl. ¶ 5.

These annual passes are governed by terms and conditions, which Kelly and Paone finally acknowledge by attaching to the complaint.  *See* Compl. Ex. 9.  Those terms and conditions provide that "[p]arks, attractions or entertainment may change operating hours; close due to refurbishing, capacity, low demand, weather, special events or other reasons; and may otherwise change or be discontinued without notice and without liability to the owners of the Walt Disney World Resort."  *See* Compl. Ex. 9.[2]  They also provide that terms and conditions "are subject to change."  Compl. Ex. 9.

### B.    The COVID-19 Pandemic

COVID-19 hit the United States in March 2020.  As a result, the State of

---

[1] WDPR does not admit or concede any of Plaintiffs' allegations, which are taken as true for purposes of this motion to dismiss only.

[2] The terms and conditions governed from August 2019 to June 2020; the terms and conditions before and after them contain materially the same language.

Florida and Orange County, Florida ordered non-essential businesses to close.  On March 15, 2020, WDPR closed Walt Disney World Resort.  Compl. ¶ 9.  Walt Disney World Resort began to reopen in July 2020.  Compl. ¶ 9.  Upon reopening, admission to the parks was subject to a new reservation system under which both a valid form of admission (annual pass or daily ticket) and a reservation was required.  Compl. ¶ 10.  The governing annual pass terms and conditions were changed to reflect the new park reservation system.

### C.   This Lawsuit

Kelly and Paone claim to be "loyal customers of Disney" who have held Walt Disney World annual passes since 2010 and 2013-2014, respectively.  Compl. ¶ 21.  They both purchased Platinum Passes before March 2020.  *Id.* ¶¶ 21-22.

Kelly and Paone claim that the reservation system implemented during the pandemic "subjected Plaintiffs to Blockout Dates" contrary to an "implied contract" governing the Platinum Passes.  Compl. ¶¶ 23-33, 36-38, 43, 69.  Kelly claims that she was unable to obtain park reservations via her Platinum Pass while reservations remained available via a non-annual multi-day ticket.  *Id.* ¶ 37.  Paone claims that she paid to book a Disney campground in order to secure "Hotel Park Pass Reservations" for five days on which she wanted to visit WDPR's parks.  Compl. ¶ 38.  She does not allege that Platinum Pass reservations were unavailable for those days, but instead states that she did not want to rely on her Pass to book in advance, as that would have allegedly caused her to "los[e] days of park access

because of Disney's rule that limited Platinum Pass holders to only three days of reservations at a time." Compl. ¶ 38.[3]

Based on these allegations, Kelly and Paone filed this putative class action lawsuit against WDPR, in which they now bring claims for breach of implied contract, breach of express contract (in the alternative), breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq. ("FDUTPA"). WDPR again moves to dismiss the complaint.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the plaintiff to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court accepts the complaint's well-pleaded factual allegations as true, but not legal conclusions couched as factual allegations, and it makes any factual inferences in favor of the plaintiff. *See Strickland v. Astrue*, 2008 WL 11439364, at *1 (M.D. Fla. Sept. 16, 2008).

## ARGUMENT

### I.    Plaintiffs Fail To State A Breach Of Express Contract Claim

The express contract and its terms and conditions foreclose Kelly and

---

[3] The complaint also includes numerous allegations relating to "Park Hopping." *See* Compl. ¶¶ 8-9, 12, 15-16. In previous versions of their complaint, Plaintiffs asserted changes to "Park Hopping" as a distinct basis for their claims, but the operative complaint now abandons any such claim.

Paone's other claims.  As a result, their express contract claim (Claim II) is the appropriate starting point.  Though Kelly and Paone's Platinum Passes are governed by an express contract, they have failed to plead a breach of that contract.

### A.   The Terms And Conditions Governing Plaintiffs' Platinum Passes Foreclose Their Breach Of Express Contract Claim

It is understandable why earlier iterations of the complaint avoided mention of WDPR's terms and conditions, as they make no express promise "to supply the Platinum Pass with no Blockout Dates."  Compl. ¶ 61; *see Megdal Assocs., LLC v. La-Z-Boy Inc.*, 2016 WL 4503340, at *4 (S.D. Fla. Feb. 19, 2016) ("'The absence of a provision from a contract is evidence of an intention to exclude it rather than of an intention to include it.'").  The terms and conditions also specifically cover WDPR's right to modify Plaintiffs' park access.  *See* Compl. Ex. 9 ("Parks, attractions or entertainment may ... change or be discontinued without notice and without liability ... ."; terms and conditions "are subject to change").  Thus, Kelly and Paone have no contractual basis to complain about WDPR's pandemic-precipitated changes to their passes' terms.  *See, e.g.*, Compl. ¶ 25 ("Disney unilaterally changed Plaintiffs' ability to use their Platinum Passes by implementing a restrictive reservation system during the COVID-19 pandemic ... .").  On that basis, their claim for breach of an express contract fails.

Kelly and Paone try to avoid that result by pointing to marketing copy on WDPR's website as somehow being a piece of the parties' express contract.  *See* Compl. ¶ 79 (citing Compl. Ex. 10).  But the parties are bound by the written terms

and conditions they agreed to when Kelly and Paone purchased their passes—not by every line on the WDPR website.  Florida law "presumes that [a] written agreement" like WDPR's terms and conditions "represents the complete and exclusive instrument setting forth the parties' intended agreement," unless it is missing some essential term—which the terms and conditions are not (nor are alleged to). *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 (Fla. Dist. Ct. App. 2005). As a result, the terms and conditions are "controlling," and "all other utterances"— like the website excerpts compiled in Exhibit 10—"are immaterial." *Gulf Atlantic Towing Corp. v. Dickerson, Inc.*, 271 F.2d 542, 546 (5th Cir. 1959).  In particular, "courts generally consider it unreasonable for a person to believe that an advertisement constitutes a binding offer." *Schultz v. Am. Airlines, Inc.*, 449 F. Supp. 3d 1301, 1312 (S.D. Fla. 2020).

Even if Kelly and Paone's cherrypicked marketing copy *could* add additional terms to the parties' express contract, their claim would still fail.  For one thing, if that were so (i.e., if the terms and conditions were only a partially integrated contract), outside writings, like those in Exhibit 10, still could not "add inconsistent provisions" to the agreement.  *Matthews v. Drew Chem. Corp.*, 475 F.2d 146, 149 (5th Cir. 1973).  And since the terms and conditions, as just explained, expressly give WDPR full authority to modify them—and, in particular, to modify the terms governing park access—any outside writing claiming to withdraw that authority cannot be contractually binding.

In any event, Kelly and Paone's excerpts of WDPR's website do even not purport to modify WDPR's authority.  To the contrary, they contain a statement, much like the one in the terms and conditions, explaining that pass entitlements "are subject to change without notice."  Compl. Ex. 10 at 1, 3.  So even Plaintiffs' version of the parties' agreement still gives WDPR authority to change the terms of park access—meaning that WDPR's exercise of that authority provides no basis for a breach of contract claim.

## B.    Plaintiffs Fail To Plausibly Allege That WDPR Imposed Blockout Dates

Even supposing that the parties' agreement promised "no blockout dates," and that term was somehow exempt from WDPR's right to alter the terms of park access, Kelly and Paone would still fail to state a claim because the facts alleged do not constitute the imposition of "blockout dates."

"Blockout Dates," Kelly and Paone allege, "are pre-designated days Disney closes off the parks to certain annual pass holders due to high park attendance or for other reasons that only Disney controls."  Compl. ¶ 6.  Plaintiffs' suggested meaning of "blockout dates" is a legal conclusion, which is not entitled to deference on a motion to dismiss. *Strickland*, 2008 WL 11439364, at *1.  But even accepting their definition, Kelly and Paone do not allege any date on which their Platinum Passes were blocked out.  They do not allege any dates on which their Platinum Passes "are not eligible" to hold reservations.  Compl. ¶ 6.  They do not allege any dates that WDPR "pre-designated" as "close[d] off" to all Platinum Pass

reservations—not Saturdays, for example, or Christmas Day. *Id.* To the contrary, Platinum Pass holders were eligible to make reservations for any day of the year that the park was open—Paone and Kelly do not and could not claim otherwise.

Instead, Paone and Kelly allege only that "Disney appears to be limiting the number of reservations available to Platinum Pass holders on any given day." *Id.* ¶ 40. Allocating reservations per day is different from blocking out or "closing off" particular "pre-designated dates" altogether. Alleging that WDPR allocated only some but not all reservations to annual passholders each day—without alleging that WDPR failed to allocate *any* reservations to Platinum Passes on any particular pre-designated date—does not plausibly allege a breach of the supposed promise of "no blockout dates."[4] Since that is all Kelly and Paone allege—not that WDPR "clos[ed] off" *any* date to *all* Platinum Pass holders, but only that there were some dates when *some* Platinum Pass holders could not get reservations (because other passholders had already reserved that day's allotment)—they fail to allege facts plausibly suggesting that WDPR imposed "blockout dates" on Platinum Passes. Since the facts Kelly and Paone allege do not add up to a breach of the promise they

---

[4] Kelly and Paone might point to *Nielsen v. Walt Disney Parks & Resorts U.S., Inc.*, 2022 WL 2132716 (C.D. Cal. Apr. 6, 2022), to contest this point, but that decision does not help them. In that case, the plaintiff had purchased a Disneyland annual pass already governed by the reservation system, and she claimed that WDPR had violated express provisions of its terms and conditions that park reservations are "subject to availability and applicable park blockout dates." *Id.* at *3. The Court denied WDPR's motion to dismiss the express contract claim in that case because it held that "there are two reasonable interpretations of the 'subject to availability' limitation," *id.* at *4, saying nothing about the meaning of the alleged contract term "blockout dates." But here there is no express contract claim predicated on a "subject to availability" limitation, so that decision is inapposite.

claim was made, their express contract claim should be dismissed.

## II.     Plaintiffs Fail To State A Breach Of Implied Contract Claim

Kelly and Paone's breach of implied contract claim should be dismissed for failure to state a claim.  First, as just explained, Kelly and Paone do not allege facts plausibly showing that WDPR impliedly (or expressly) made and broke a promise of "no blockout dates."  That bars both their express and implied breach of contract claims, since both turn on WDPR's supposed imposition of blockout dates.

Second, the only place Plaintiffs allege that the "no blockout dates" language—the language on which their implied contract claim is based—appeared is in the website excerpts discussed above.  But as explained, that same website explains that pass entitlements "are subject to change without notice."  Compl. Ex. 10 at 1, 3.  So, if Plaintiffs did have an implied contract with WDPR, that implied contract still gave WDPR the right to modify their pass entitlements—and WDPR therefore cannot have breached it.

And finally, Plaintiffs cannot bring an implied contract claim when an *express* contract governs the same subject matter—but does not grant them the right they claim is implied.  That is the case here.  It is well established that "a claim of an implied in fact contract cannot survive where a valid, express contract exists that covers the same subject matter."  *White Constr. Co. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1334 (M.D. Fla. 2009).

That rule precludes Kelly and Paone's implied contract claim because a

"valid, express contract exists" between them and WDPR.  To be sure, Kelly and Paone nominally plead Count II "in the alternative," Compl. at 30, and assert that they "did not sign nor agree to any express contractual terms."  Compl. ¶¶ 57-58.  But the rest of their complaint contradicts that assertion.  *See Frone v. JP Morgan Chase & Co.*, 695 F. App'x 468, 472 (11th Cir. 2017) (a court need not accept "contradictory conclusory allegations" over "more specific facts" pleaded elsewhere in the complaint).  Most significantly, they allege that they "entered into contracts with" WDPR and that "paragraphs 77 through 95"—the *express* contract allegations—detail exactly what contract they entered into.  Compl. ¶ 97.[5]  That allegation not only establishes that Kelly and Paone *did* agree to the Terms and Conditions—it also provides an independent ground for dismissing both the contract claims.  Such "contradictory and confusing" allegations—denying that Plaintiffs agreed to the Terms and Conditions in one breath and asserting in the next that they did agree to it—fail to state a plausible claim.  *See Marino v. Spizigo Enters.*, 2021 WL 8894429, at *6 (S.D. Fla. Feb. 3, 2021); *Hernandez v. Integon Nat'l Ins. Co.*, 2020 WL 6581610, at *5-6 (S.D. Fla. Nov. 10, 2020) (complaint failed to "'state a claim to relief that is plausible on its face'" where it was "replete with contradictory allegations" when "read alongside" an exhibit attached thereto);

---

[5] Notably, these allegations come in Count III, which—unlike the breach of express contract claim—is *not* pleaded in the alternative.  Kelly and Paone cannot sidestep the unequivocal allegations contained elsewhere in their complaint simply by pleading breach of express contract "in the alternative," or by packing their express contract allegations with the terms "alleged" and "purportedly."  *See, e.g.*, Compl. ¶¶ 77-79, 82.

*Smith v. Dekalb Cnty. Jail*, 2014 WL 129509, at *2 (N.D. Ga. Jan. 14, 2014) ("[C]ontradictory and conclusory factual allegations … are insufficient to state a claim.").

In fact, the complaint is replete with statements invoking the existence of an express agreement.  Kelly and Paone allege that WDPR's Reservation System "unilaterally modified all Platinum Pass holders' contracts," that those changes did "not even resemble the original agreement bargained for," and that they never indicated "that they wished to change or modify the terms of their Platinum Passes."  Compl. ¶¶ 11, 17, 35.  It is difficult to square talk of a contract governing all Platinum Pass holders, an "original agreement bargained for" by those passholders, and various "terms" associated with those agreements, with an implied contract theory that infers only a single promise—"no blockout dates"— from advertising copy.  Rather, those allegations are intelligible only by reference to a written set of terms and conditions—the express contract Plaintiffs elsewhere concede they agreed to.  Compl. ¶ 97.  And that express contract forecloses Kelly and Paone's implied contract claim because it "covers the same subject matter" as the purported implied contract:  their access to the Walt Disney World Resort theme parks with their annual passes. *White Constr.*, 633 F. Supp. 2d at 1334.

Nor can Kelly and Paone avoid the parties' contractual terms by claiming that the agreement was unconscionable.  "To support a determination of unconscionability … the court must find that the contract is both procedurally

unconscionable and substantively unconscionable." *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. Dist. Ct. App. 1999). "Florida courts apply the doctrine of unconscionability 'with great caution,'" and Plaintiffs have not pleaded facts that could satisfy its demanding requirements. *Lambert v. Signature Healthcare, LLC*, 2022 WL 2571959, at *4 (11th Cir. July 8, 2022) (quoting *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. Dist. Ct. App. 2003)).

The only fact Kelly and Paone allege that could possibly establish procedural unconscionability is that the terms and conditions were "a standard form" offered "on a take it or leave it basis" between parties of unequal "bargaining power." Compl. ¶¶ 83-84. But "the presence of an adhesion contract alone does not" establish "procedural unconscionability." *VoiceStream Wireless Corp. v. U.S. Comms, Inc.*, 912 So. 2d 34, 40 (Fla. Dist. Ct. App. 2005); *see also Bennett v. Behring Corp.*, 466 F. Supp. 689, 696 (S.D. Fla. 1979) ("A mere showing of unequal bargaining power alone will not establish a claim of unconscionability."). It especially does not do so here, where Kelly and Paone have alleged that they "could obtain the desired product or services"—annual theme park passes—"elsewhere." *Kendall Imports, LLC v. Diaz*, 215 So. 3d 95, 110 (Fla. Dist. Ct. App. 2017); *see also Orkin Exterminating Co. v. Petsch*, 872 So.2d 259, 265 (Fla. Dist. Ct. App. 2004) (adhesion contract not procedurally unconscionable where customer could obtain extermination services elsewhere); *Weston*, 857 So.2d at 285 (adhesion contract not procedurally unconscionable where customer could obtain nursing home

services elsewhere).   According to Plaintiffs, an annual park pass to Universal Studios is an adequate substitute for WDPR's passes because, in Paone's own words, "a park is a park."   Compl. Ex. 1 at 11 ("I'm thinking of buying Universal Annual Passes for my family and switching allegiances because honestly, a park is a park ....").

As for substantive unconscionability, all Kelly and Paone offer is the conclusory allegation that "the terms and conditions of the contract ... were unconscionable."   Compl. ¶ 82.   But even a contract "which may lead to hardship on one side" is not substantively unconscionable.   *Weston*, 857 So. 2d at 284.   A contract is substantively unconscionable only "where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice[.]"   *Steinhardt v. Rudolph*, 422 So. 2d 884, 890 (Fla. Dist. Ct. App. 1982).   And the Eleventh Circuit has accordingly held that "changes-to-agreement" clauses like the one here are "not substantively unconscionable."   *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1234 n.11 (11th Cir. 2012).

## III.   Plaintiffs Fail To State A Good Faith And Fair Dealing Claim

Kelly and Paone also fail to state a claim for breach of the implied covenant of good faith and fair dealing.   "[T]here are two limitations on such claims," and both preclude Kelly and Paone's claim.   *QBE Ins. Corp. v. Chalfonte Condo.*

*Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012).

First, "an action for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999). Kelly and Paone have failed to adequately allege breach of an express contract; their claim for a breach of the implied covenant thus fails.

The second limitation on an implied covenant claim is "where application of the covenant would contravene the express terms of the agreement." *QBE Ins. Corp.*, 94 So. 3d at 548; *see, e.g.*, *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1438 (S.D. Fla. 1996) ("The implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties."). Here, applying the implied covenant that Kelly and Paone allege would contravene the express terms permitting WDPR to modify the terms and conditions governing park access. The express terms of the agreement provided that "[p]arks, attractions or entertainment may ... change or be discontinued without notice and without liability" and that the governing terms and conditions "are subject to change." Compl. Ex. 9. To hold that changing park access and annual pass terms and conditions by adopting the reservation system violated the implied covenant would directly contravene the express terms permitting WDPR to make such changes. *See Sorrentino v. FCA, US LLC*, 2019 WL 13224961, at *4 (S.D. Fla. July 29, 2019) (dismissing claim "that the cancellation of the Service Contract violated

the covenant of good faith and fair dealing" because "that claim contravenes the express terms of the contract, which permit cancellation").

Kelly and Paone's implied covenant claim is also subject to dismissal because it is duplicative of their contract claims. Identical facts underlie those claims. *Compare* Compl. ¶¶ 56-95, *with id.* ¶¶ 96-113; *see id.* ¶ 97 (alleging in support of implied covenant claim that, "[a]s discussed more fully in paragraphs 77–95, *infra*, Plaintiffs and the Class entered into contracts with Defendant"). When "[t]he factual allegations supporting Plaintiff's breach of contract claim are identical to those underlying her claim for breach of the implied covenant," the "breach of implied covenant of good faith and fair dealing claim is duplicative of her breach of contract claim" and should be dismissed. *Grant v. Centerstate Bank*, 2021 WL 9594009, at *3 (M.D. Fla. July 6, 2021); *see also, e.g.*, *Radiation Med. Physicians, P.A. v. TomoTherapy Inc.*, 533 F. Supp. 3d 1127, 1139 (M.D. Fla. 2021) (similar).

## IV. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed

Kelly and Paone's unjust enrichment claim fails for two reasons. *First*, they cannot pursue a claim of unjust enrichment because there is no dispute that a contract governs the subject matter at issue. *Second*, they have failed to plead a claim for unjust enrichment because they did not confer a benefit on WDPR outside of their contractual relationship and it is plainly equitable for WDPR to retain the contract price paid for their annual passes, which they used.

### A.    Unjust Enrichment Fails When A Valid Contract Exists

When it is undisputed that a contract governs the subject matter at issue, plaintiffs cannot pursue a claim of unjust enrichment.[6]  *See Spears v. SHK Consulting & Dev., Inc.*, 338 F. Supp. 3d 1272, 1278 (M.D. Fla. 2018) (dismissing unjust enrichment claim "based on the same subject matter as the breach-of-contract claim").  Just so here:  For both their contract and unjust enrichment claims, Kelly and Paone allege that WDPR failed to deliver on a supposed contractual promise of "no Blockout Dates" for Platinum Pass holders.  *Compare* Compl. ¶¶ 66-67 ("Defendant breached the implied contracts with Plaintiffs and the Class by unilaterally subjecting the Platinum Pass to Blockout Dates.") *and* Compl. ¶ 81 ("Disney violated the express contractual term 'no blockout dates' by effectively imposing Blockout Dates through its restrictive Park Pass Reservation System."), *with* Compl. ¶ 120 ("It would be unjust and inequitable for Defendant to retain the full amount of each Platinum Pass because Defendant did not provide Plaintiffs with what they paid for: an annual pass with no Blockout Dates.").[7]

Kelly and Paone try to avoid this rule by pleading unjust enrichment "in the alternative" of their contract claims, Compl. at 40, 47, but that maneuver fails.  It

---

[6] To be sure, the parties dispute whether an express or implied contract governs their relationship. But there is no dispute that *a* contract governs their relationship.

[7] In fact, before the Court dismissed their impermissible shotgun pleading, ECF No. 46, Kelly and Paone went so far as to incorporate their breach of contract allegations by reference into their unjust enrichment claim.  *See* ECF No. 45 (¶ 79) ("Plaintiffs adopt and incorporate by reference the prior paragraphs as if fully set forth herein.").

is true that an unjust enrichment claim can proceed alternatively to a contract claim when the existence of a contract is disputed—the contract claims proceed if there is one, or the unjust enrichment claim proceeds if not.  But unjust enrichment claims cannot proceed in the alternative where, as here, neither party contests the existence of a governing contract.  *See, e.g.*, *Huang v. Chen*, 2022 WL 3681928, at *5 (S.D. Fla. June 7, 2022); *Longo v. Campus Advantage, Inc.*, 588 F. Supp. 3d 1286, 1298 (M.D. Fla. 2022) (rejecting plaintiffs' argument they pled their unjust enrichment claim in the alternative because a contract existed and they did not allege it was invalid); *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1082-1083 (S.D. Fla. 2019) (dismissing unjust enrichment claim that "fails to acknowledge the existence of contractual remedies").  Under these circumstances, there is no "alternative" to a contract claim.  Kelly and Paone either have a claim based on their contract rights or they have no claim at all.

### B.    Plaintiffs Fail To State A Claim For Unjust Enrichment

In any event, Kelly and Paone fail to plead an unjust enrichment claim.  "In Florida, '[t]he essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.'"  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).  Kelly and Paone fail to plead they conferred a benefit on WDPR outside their contract,

and they received substantial benefits that preclude any claim of "inequity."

*First*, Kelly and Paone do not allege that they conferred any benefit on WDPR beyond the price they paid for their annual passes pursuant to contract. *See* Compl. ¶ 114. That is not the sort of benefit that can support an unjust enrichment claim, because "[t]he law of unjust enrichment is concerned solely with enrichments that are unjust *independently* of wrongs and contracts." *Flint v. ABB, Inc.*, 337 F.3d 1326, 1331 n.2 (11th Cir. 2003). But Kelly and Paone's unjust enrichment claim is premised entirely on the allegations that WDPR "did not provide Plaintiffs with what they paid for: an annual pass with no Blockout Dates." Compl. ¶ 120. Where, as here, a "plaintiff relies on a breach of contract to supply the 'unjustness' of the defendant's holdings," unjust enrichment cannot proceed. *Flint*, 337 F.3d at 1330 n.2; *see also Day v. Sarasota Drs. Hosp., Inc.*, 2020 WL 7390153, at *7 (M.D. Fla. Feb. 7, 2020) (similar).

*Second*, Kelly and Paone cannot allege that it would be inequitable for WDPR to retain the purchase price of their annual passes because they "derived a substantial benefit from the payment." *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012). In *Alvarez*, the court rejected the plaintiffs' unjust enrichment claim against a cruise operator because the plaintiffs "remained on board the ship for the duration of the cruise," holding that this substantial benefit barred a claim for unjust enrichment based on the purchase price of that cruise pursuant to a contract. *Id.* Similarly, Kelly and Paone derived

substantial benefits from WDPR—not only before COVID-19 forced changes to the parks' operation, but also after the implementation of reservation-based admission. *See, e.g.*, Compl. ¶¶ 7, 9, 21, 40. Where plaintiffs derived substantial benefits, they "cannot claim unjust enrichment." *Alvarez*, 905 F. Supp. 2d at 1341.

## V.   Plaintiffs Fail To State A FDUTPA Claim

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Kelly and Paone claim that WDPR (1) "deceptively marketed and sold Platinum Passes as having no Blockout Dates," but then "subjected the Platinum Pass to Blockout Dates via its restrictive Park Pass Reservation System," and (2) "misrepresented the price and features of the Platinum Pass, in that Plaintiffs were led to believe that they would be able to attend the park at any time throughout the year." Compl. ¶ 125. To plead a claim for damages under the FDUTPA, Kelly and Paone must allege facts showing "'(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.'" *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097-1098 (11th Cir. 2021). They do not.

### A.   Plaintiffs Plead No Deceptive Or Unfair Act

A deceptive act is one that "was likely to deceive a consumer acting reasonably in the same circumstances." *Marrache*, 17 F.4th at 1098. An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.*

Kelly and Paone do not plausibly allege deception or unfairness.  Advertising that Platinum Passes have "no Blockout Dates" (*see* Compl. ¶ 33) is not plausibly deceptive or unfair because, under Kelly and Paone's own definition of "blockout dates" and facts alleged, WDPR did not impose blockout dates.  *See supra* at Part I.B.  If the reservation system "limit[s] how many Platinum Pass holders could enter the park daily" as they claim, it is by requiring reservations—not by imposing blockout dates.  Compl. ¶ 125(a).  It would be one thing to allege that WDPR had represented "no reservations required."  But representing that Platinum Passes had "no blockout dates" is not plausibly alleged to be deceptive or unfair.

Kelly and Paone also claim WDPR "misrepresented the price" of the Platinum Pass.  Compl. ¶ 125(b).  It is not clear how.  They say they paid $633 total or $67.75 per month for their passes, Compl. ¶ 22, and they do not allege that WDPR represented the prices would be different.  This bare allegation of price misrepresentation does not state a claim.  *See, e.g.*, *Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 548 (S.D. Fla. 2013).

Finally, Kelly and Paone claim that "the price" somehow "led [them] to believe that they would be able to attend the park at any time throughout the year."  Compl. ¶ 125(b).  It is not clear, or plausibly alleged, how the mere "price of the Platinum Pass" led to that particular belief at all (let alone made it reasonable).  But in any event, "a plaintiff has no FDUTPA claim where he signed a contract whose terms expressly contradict any misrepresentations on which he relied."

*Zlotnick v. Premier Sales Grp., Inc.*, 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006), *aff'd*, 480 F.3d 1281 (11th Cir. 2007). As discussed, the terms and conditions advised passholders that "[p]arks, attractions or entertainment may change operating hours; close due to refurbishing, capacity, low demand, weather, special events or other reasons," and that the terms themselves were "subject to change." Compl. Ex. 9. Those provisions made clear that Platinum Pass holders' "ab[ility] to attend the park at any time throughout the year" was subject to change, Compl. ¶ 125(b), making the pandemic-era change not plausibly deceptive or unfair. *See Medmoun v. Home Depot U.S.A., Inc.*, 2022 WL 1443919, at *4-*5 (M.D. Fla. May 7, 2022) (dismissing FDUTPA claim because a "consumer does not act reasonably, and thus cannot show an unfair or deceptive practice, when he relies on alleged misrepresentations that are disclaimed in a contract he signed"); *Century Land Dev., L.P. v. FFL Dev., L.L.C.*, 2008 WL 1850753, at *4 (S.D. Fla. Apr. 24, 2008) (dismissing FDUTPA claim where "the terms were sufficiently clear and in complete conflict with the alleged misrepresentations").

### B.   Plaintiffs Do Not Plead Actual Damages

Kelly and Paone also "cannot state a cause of action under FDUTPA" because they "fail[] to plead that they suffered actual damages." *Marrache*, 17 F.4th at 1098. FDUTPA does not provide for punitive, nominal, or speculative damages or for "compensation for subjective feelings of disappointment." *Id.* at 1101; *Lanard Toys Ltd. v. Dolgencorp, LLC*, 2021 WL 8200197, at *39 (M.D. Fla. Aug. 20, 2021).

Kelly and Paone fail this requirement. They do not allege what their actual damages are or how they both suffered them. The complaint pleads only conclusory allegations that WDPR's "unfair or deceptive acts or practices" led them to "sustain[] actual damages in an amount to be proved at trial." Compl. ¶ 128. On this basis alone, their FDUTPA claim should be dismissed. *See CRMSuite Corp. v. Gen. Motors Co.*, 2020 WL 5898970, at *7 (M.D. Fla. Oct. 5, 2020).

## CONCLUSION

The Court should dismiss the complaint with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for WDPR certifies that they have conferred in good faith with counsel for Plaintiffs, who oppose the relief sought in this Motion.

DATED: February 15, 2023

Respectfully submitted,

*/s/ Dennis P. Waggoner*
Dennis P. Waggoner (Fla. Bar No. 509426)
dennis.waggoner@hwhlaw.com
Joshua C. Webb (Fla. Bar No. 051679)
Joshua.webb@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E. Kennedy Blvd., Suite 3700
Tampa, FL 33602
Tel: (813) 221-3900
Fax: (813) 221-2900

Alan Schoenfeld (*pro hac vice*)
Ryan M. Chabot (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Defendant Walt Disney Parks and Resorts U.S., Inc.*