# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

|  |  |
|---|---|
| ERICA KELLY and MARILYN PAONE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>WALT DISNEY PARKS AND RESORTS U.S., INC.,<br><br>                    Defendant. | Case No: 6:22-cv-1919-RBD-DCI |

## DEFENDANT'S OMNIBUS MOTION IN LIMINE

Defendant Walt Disney Parks and Resorts U.S., Inc. ("WDPR"), respectfully submits this motion *in limine* for orders precluding the following:

(1)  evidence and testimony about purported customer complaints;

(2)  evidence and testimony about subsequent changes to applicable terms and conditions;

(3)  evidence and testimony about a *New York Times* op-ed;

(4)  evidence and testimony about blog posts related to the reservation system;

(5)  evidence and testimony about litigation related to the Disneyland Resort in California;

(6)  evidence and testimony about annual pass programs and pandemic reopening at the Disneyland Resort in California;

(7)    evidence and testimony about WDPR's financial resources (or those of its parent company, The Walt Disney Company);

(8)    Plaintiffs' proffered damages demonstratives; and

(9)    Plaintiffs' proffered demonstratives about reservation allocations.

## Argument

### I.    Opposed Motion *in Limine* No. 1

WDPR seeks to exclude a compendium of inquiries and comments by customers about annual passes under the reservation system, which Plaintiffs have called a "complaint" log.[1]  Ex. 1.[2]  Plaintiffs include this document (i.e., the log) on their proposed exhibit list and propose an over-100-slide demonstrative based on it.  Ex. 2.

This log, along with its related demonstrative, is inadmissible hearsay under Federal Rule of Evidence 802.  Plaintiffs used the log at summary judgment to argue that other Platinum Pass holders were unable to obtain reservations to the parks on various dates and understood these days to be "blockout dates."  *See* Dkt. 91 at 11-12, 14.  Plaintiffs claimed this evidence showed that (1) Plaintiffs' definition of "blockout dates" is correct and (2) WDPR breached its contract by imposing "blockout dates."  *Id.*  These uses are hearsay.  Any non-hearsay use of this

---

[1]    WDPR disputes that these communications are all "complaints" about the reservation system, or that they all reflect confusion about the meaning of the term "blockout dates."

[2]    All documents or demonstratives WDPR seeks to exclude refer to material Plaintiffs provided at the parties' pretrial meeting.  With the exception of adding page numbers and removing PACER headings to facilitate the Court's review, WDPR has filed these exhibits and demonstratives in the format provided by Plaintiffs.

document would be irrelevant to Plaintiffs' claims and inadmissible under Rules 401 and 402, and the risk of unfair prejudice, confusing the issues, and wasting time would substantially outweigh any minimal probative value under Rule 403.

First, this document contains inadmissible hearsay—out-of-court statements of customers offered for the truth of the matter asserted. Plaintiffs seek to use these statements to establish, as a matter of fact, that Platinum Pass holders were unable to make reservations and misunderstood the meaning of the term "blockout dates." No hearsay exception applies. This document is not, for example, a business record under Rule 803(6) because "the customers" making the statements to WDPR "were not acting in the regular course of business." *ADT LLC v. Vivint, Inc.*, 2017 WL 11632866, at *2 (S.D. Fla. Dec. 8, 2017) ("'The fact that statements made by strangers to the business become a part of its records ... does not make them business records.'" (quoting *United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000))); *Candy Craft Creations, LLC v. Gartner*, 2015 WL 6680883, at *2 (S.D. Ga. Nov. 2, 2015) (collecting cases). No other exception under Rule 803 even arguably applies.[3]

---

[3] The fact that this case may proceed as a class action does nothing to absolve these statements of their hearsay status. Plaintiffs bring their claims as class representatives and if the case proceeds as a class action they must be able to prove their claims on a classwide basis, as to every class member, using the evidence that they would be able to use in an individual suit. *See Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) ("[T]he requisite proof also in no way hinges upon whether or not the action is brought on behalf of a class under Rule 23. It is axiomatic that a procedural rule cannot 'abridge, enlarge, or modify any substantive right.'"). Additionally, Plaintiffs cannot establish that any individual whose comments and inquiries are included in the log are actually members of the putative class.

Nor does this exhibit satisfy the residual hearsay exception under Rule 807. Rule 807 requires that the statement sought to be admitted "is supported by sufficient guarantees of trustworthiness" and that "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." "The residual hearsay exception is rarely invoked, and only in exceptional circumstances. The proponent of a statement, citing the residual exception, bears a heavy burden." *ADT LLC v. Alarm Protection LLC*, 2017 WL 1881957, at *2 (S.D. Fla. May 9, 2017) (internal citations omitted) (customer complaints did not satisfy the residual exception). Plaintiffs cannot meet this burden. These communications lack "sufficient guarantees of trustworthiness," as they are "unadjudicated allegations," *ADT LLC v. Vivint Smart Home, Inc.*, 2023 WL 3568117, at *7 (S.D. Fla. May 19, 2023), which are not "subject to cross-examination," *F.T.C. v. Washington Data Res.*, 2011 WL 2669661, at *5 (M.D. Fla. July 7, 2011). These communications have not been verified, and individuals who wrote to or called in to WDPR may have been incentivized to exaggerate their experiences or misrepresent their understanding of "blockout dates" to try to get accommodations from WDPR. For example, when Marilyn Paone wrote to WDPR to complain on June 21, 2020, she demanded a refund for her friends' reservations in part because "I think I have spent enough money with Disney this year alone, somewhere in the vicinity of $45,000+ and that was only from Jan – March 15, 2020." Ex. 3. Under oath, however, she admitted "that was an exaggeration"— "an exaggeration of a guesstimate" that was "an inaccurate

statement."  Ex. 4 (Paone Dep. Tr.) at 102:18-19, 103:25, 105:4-5.  The other comments written to WDPR are not subject to cross-examination into their truthfulness, and are duplicative of and not "more probative" than Plaintiffs' own testimony.

Second, should Plaintiffs claim that they plan to offer these communications for a non-hearsay purpose, such as showing that WDPR was on notice that Platinum Pass holders were unable to make reservations or that they misunderstood the term "blockout dates," the communications still should not be admitted because they lack relevance under Rules 401 and 402.  None of Plaintiffs' claims turns on WDPR's knowledge.  *See, e.g.*, *Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, 2013 WL 432614, at *5 (D. Nev. Feb. 4, 2013) (granting motion *in limine* to exclude complaints where plaintiff had "not established that [defendant's] knowledge [was] an element of any of the remaining claims").  According to Plaintiffs' theories of liability, Platinum Pass holders experienced damages at the time WDPR implemented the reservation system; WDPR's notice of subsequent complaints about how the reservation system operated has no bearing on Plaintiffs' causes of action.[4]  Regardless, this document would be duplicative of other

---

[4]      And to the extent Plaintiffs point to a non-hearsay purpose, such as notice, that non-hearsay purpose would require the jury to conclude that the customer statements recorded in the log are in fact true—in other words, that the statements reflect that Platinum Pass holders were unable to make reservations and misunderstood the meaning of the term "blockout dates."  In order to find that Disney had notice of passholders' inability to make reservations and related confusion, "the jury must presume the truth and validity of each inadmissible hearsay complaint."  *ADT LLC*, 2023 WL 3568117, at *7 (citing *Moon v. Advanced Med. Optics, Inc.*, 2010 WL 11500832, at *9 (N.D. Ga. Dec. 29, 2010)).  Plaintiffs cannot sidestep the hearsay rules in this fashion.  *See id.*  Even if these communications were admissible for a non-hearsay purpose—and

evidence from Plaintiffs themselves that demonstrate WDPR's notice.  *See, e.g.*, Dkt. 95-2 at PLAINTIFFS000017 (Paone's email to WDPR complaining about the reservation system).  And many of the communications concern issues entirely unrelated to Plaintiffs' claims.  *See, e.g.*, Ex. 1 at 1, row 2 (customer issue related to linking pass reservations and hold times); row 6 (question about upgrading to Platinum Pass and a birthday reservation for Hollywood Studios).  This document should not be admitted for any purpose.

Even if the Court admits the log for some limited purpose, however, it should still exclude Plaintiffs' cumulative, unfairly prejudicial, and time-wasting 126-slide-deck demonstrative replicating certain comments under Rule 403.  Plaintiffs can testify about their own complaints related to the park pass reservation system. To give a 126-slide demonstrative showing others complained too would waste the Court's and jury's time with duplicative, irrelevant, and needlessly inflammatory evidence.  *Cf. Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 346 (1st Cir. 1998) (affirming exclusion of certain customer complaints as cumulative).

## II.    Opposed Motion *in Limine* No. 2

WDPR seeks to exclude evidence and testimony related to changes to the Walt Disney World Resort's ticket and pass Terms and Conditions after the class period ended on September 7, 2021.  Exs. 5 (October 2022) and 6 (April 2024

---

they are not—they should still not be admitted under Rule 403 for their tendency to waste time, confuse and mislead the jury, and unfairly prejudice Disney in a manner that substantially outweighs any negligible probative value related to that non-hearsay purpose.  And it bears repeating, Disney's notice is not relevant to any of the Plaintiffs' claims.

T&Cs). [5]   Plaintiffs have used these documents throughout the litigation as evidence of WDPR's allegedly culpable conduct.   Plaintiffs relied on WDPR's revised 2022 terms and conditions to argue that WDPR breached its contract with Platinum Pass holders, arguing that WDPR "was not 'contractually permitted' to make changes to the terms of the Platinum Pass 'without notice'" and only gave notice when it published the 2022 terms and conditions.  *See* Dkt. 91 at 4, 6, 9-11 ("The *first* time [the allegedly required] information was explicitly conveyed to APs was in the 2022 Terms & Conditions ….   Disney does not and cannot cite to any document prior to the 2022 Terms & Conditions where all of these terms were disclosed to APs during the refund period." (emphasis in original)).

This use of the subsequent terms at trial is impermissible.   Federal Rule of Evidence 407 excludes evidence of "measures [that] are taken that would have made an earlier injury or harm less likely to occur" when that evidence is offered to show "culpable conduct."   That is just what Plaintiffs propose:  to use later changes to the Terms and Conditions to show that WDPR is culpable for failing to include this language in earlier Terms.   Rule 407 prohibits admitting evidence of changes to contract terms for this reason.  *See Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1213-14 (10th Cir. 2002) (affirming Rule 407 precludes evidence of changed contract terms); *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1045

---

[5]     The 2022 and 2024 Terms and Conditions elaborate on how the park pass reservation system operates, including as to the separate allocation of reservations for passholders and day ticket holders.

(7th Cir. 2007) (same); *Reynolds v. Univ. of Pa.*, 483 F. App'x 726, 728 (3d Cir. 2012) (same).[6] This prohibited use falls squarely within Rule 407's broad phrase "'culpable conduct'"—which it uses "rather than a more narrow phrase such as 'tortious conduct'"—since the word "culpable" includes the "'breach of a duty'" such as a contractual obligation. *Reynolds*, 483 F. App'x at 731 (quoting Black's Law Dictionary (9th ed. 2009)).  To admit this evidence would "discourag[e] efforts to clarify contractual obligations" and would "perpetuat[e] ... confusion caused by unclarified language in the contract." *Pastor*, 487 F.3d at 1045.  It should be excluded.

## III.    Opposed Motion *in Limine* No. 3

The Court should exclude *The New York Times* op-ed "Bob Chapek Didn't Believe in Disney Magic" published on November 29, 2022, well after the class period, by an individual unaffiliated with WDPR who sells unofficial touring plans for the theme parks.  Ex. 7.  At summary judgment, Plaintiffs used this op-ed to support their allegations that "Platinum Pass holders were less profitable and unfavorable guests in the eyes of Disney."  Dkt. 91 at 11.  They highlighted the article's reference to a statement from a press release The Walt Disney Company

---

[6]    The Eleventh Circuit has not addressed the question whether Rule 407 applies to revised contract terms.  The only circuit that declined to apply Rule 407 to revised contract terms did so based on an earlier version of the Rule.  *See R.W. Murray, Co. v. Shatterproof Glass Corp.*, 758 F.2d 266, 274 (8th Cir. 1985).  The *Shatterproof* court reasoned that because Rule 407 did not apply to strict liability torts, it similarly did not apply to contract claims.  *Id.*  The 1997 amendment to Rule 407 clarified that the Rule does apply to such torts, rendering the logic underpinning *Shatterproof* court's conclusion inapplicable.  *Reynolds*, 483 F. App'x at 732 n.3.

issued following an August 2022 earnings call that, according to the author, "suggest[s] that earnings would have been greater but for an 'unfavorable attendance mix' at Disneyland" in California.  Ex. 7 at 2 (section highlighted by Plaintiffs).  The op-ed interprets this phrase—"unfavorable attendance mix"—as saying that "too many annual pass holders were visiting from nearby instead of out-of-towners." *Id.*

This op-ed is irrelevant under Rules 401 and 402, inadmissible hearsay without an exception under Rule 802, and unfairly prejudicial under Rule 403.

First, the op-ed is riddled with irrelevant and inadmissible information.  As noted above, Plaintiffs use this document for language that is specifically about park attendance at a different Disney resort and after the class period, despite the fact that Disneyland Resort and Disney World Resort have distinct visitor compositions.  *See, e.g.*, Ex. 8 (Filley Dep. Tr.) at 177:4-5 (Disneyland and Disney World "have very different consumers.").  The op-ed also contains similarly irrelevant complaints about the Genie+ and Lightning Lane systems, plugs for the author's own vacation planning website, gossip about Disney's former CEO Bob Chapek, and complaints that he did not "believe in Disney magic."  None of this content bears on any "fact ... of consequence in determining the action" nor "has any tendency to make [that] fact more or less probable."  Fed. R. Evid. 401.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

Second, the op-ed constitutes inadmissible hearsay under Rule 802.  Newspaper articles such as op-eds are hearsay.  *United States v. Baker*, 432 F. 3d

1189, 1211 (11th Cir. 2005) (holding that newspaper articles relevant primarily to establish the truth of their contents are inadmissible hearsay); *United States v. Michtavi*, 155 F. App'x 433, 435 (11th Cir. 2005) ("'[A] newspaper article is hearsay, and in almost all circumstances is inadmissible.'"); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (noting newspaper articles are "classic, inadmissible hearsay"); *Williams v. Consol. City of Jacksonville*, 2006 WL 305916, at *10 (M.D. Fla. Feb. 8, 2006) (excluding newspaper article as hearsay); *Poulin v. Bush*, 650 F. Supp. 3d 1280, 1304 (M.D. Fla. 2023) (same). Even if Plaintiffs attempt to frame the press release's irrelevant statement regarding Disneyland attendance as a statement of a party opponent, they still cannot identify an overarching hearsay exception for the op-ed itself. *See* Fed. R. Evid. 805.

Third, this op-ed should be excluded under Rule 403 because any "probative value is substantially outweighed by a danger of … unfair prejudice [and] misleading the jury." The op-ed was written by "an author of 'The Unofficial Guides' theme park books and the owner of the theme park website TouringPlans.com," *see* Ex. 7 at 4, not an expert in interpreting financial documents like earnings releases. He is not a disclosed witness in this case. His inexpert opinion about the meaning of three words from a twenty-page earnings statement is baseless speculation, which WDPR could not cross-examine. It has no probative value but will unfairly prejudice WDPR and mislead the jury.

## IV.    Opposed Motion *in Limine* No. 4

The Court should exclude posts from the websites *Disney Food Blog*, *Touring Plans Blog*, *Disney Dining*, and *WDW News Today*—none of which is affiliated with WDPR—and related demonstratives.  Exs. 9-18 (blog posts) and 19 at 8-23 (proposed blog demonstrative).  These posts rely on apparent screenshots of calendars from the reservation system interface purporting to document reservation availability for annual passholders, resort guests, and day guests.  Plaintiffs extract these apparent screenshots in a set of demonstratives.   At summary judgment, Plaintiffs used these posts to attempt to demonstrate that "there were many dates Platinum Pass holders could not obtain a reservation even though reservations were available for Day Guests or Resort Guests."  Dkt. 91 at 3. They are inadmissible hearsay and unfairly prejudicial and likely to mislead a jury.

First, these posts are inadmissible hearsay.  *See Baker*, 432 F. 3d at 1211; *see supra* at pp. 9-10 (collecting cases).  No hearsay exception applies to them or their content.  The supposed images of the reservation system interface within them cannot be reliably attributed to WDPR as statements of a party opponent.  None of these blog sites is affiliated with WDPR or The Walt Disney Company, and none purports to speak on their behalf.  *See, e.g.*, https://wdwnt.com/disclosure/ ("WDWNT, LLC is an unofficial site and is not in any way affiliated with The Walt Disney Company.  The views expressed on this website are the personal opinions of the writers only and should not be construed as the official position of WDWNT, LLC.").  Plaintiffs cannot verify who obtained these images, when they were

obtained, or how they were obtained.  There is no way to know whether they accurately and truthfully represent the reservation system at any point in time.  No trial witness could lay a foundation for them.  The articles should therefore be excluded altogether.

Second, the articles should be excluded under Rule 403 as overly prejudicial and likely to mislead a jury.  The blogs are inaccurate descriptions of the reservation system that fail to capture how the reservation system operated in real-time.  As just one example, one of Plaintiffs' articles reports on supposed unavailability on January 3, 2021, Ex. 9 at 10-11, but undisputed data produced in discovery shows that no park ended up fully booked to annual passholders on January 3, 2021.  *See* Dkt. 89 at 1-2; Ex. 20 (Excerpt from WDPR-KELLY-DATA-000000001).  Also, the lack of reservations at one moment (e.g., a snapshot shown on the blog) did not mean the parks would remain fully booked for that day.  As WDPR's 30(b)(6) representative explained, "Park capacities were changing regularly.  A guest might have looked, for example, on a Wednesday and a park allocation might have been full.  They might have looked on a Friday because somebody else cancelled and/or we reallocated [reservations]."  Ex. 8 (Filley Dep. Tr.) at 278:16-22.  This particular article concedes its own unreliability at the very bottom, noting, "As a reminder, Disney World updates their Park Pass Reservation availability frequently, so be sure [to check] their calendar ahead of your visit if you still haven't booked … [r]eservations."  Ex. 9 at 13.  Plaintiffs' proposed articles improperly attempt to smuggle evidence into the case that Plaintiffs cannot verify

and that would have been the proper domain of expert testimony.  The articles and related demonstratives must therefore be excluded.

## V.        Opposed Motion *in Limine* No. 5

WDPR seeks to exclude evidence and testimony regarding *Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055-DOC-ADS (C.D. Cal), including the fact of its settlement and any details about its settlement terms and amount.  *Nielsen* was a lawsuit about the annual pass program at the Disneyland Resort in California that was resolved in 2023.  That case concerned a different theme park, in a different state, that reopened at a different time, under a different annual pass program with different contractual terms and different pricing, and that employed a different reservation system.

First, references to *Nielsen* are inadmissible under Rules 401 and 402 as lacking relevance.  *See Rushing v. Wells Fargo Bank, N.A.*, 2012 WL 3155790, at *1 (M.D. Fla. Aug. 3, 2012) ("[E]vidence of other lawsuits is not normally relevant and not permitted.").  No aspect of *Nielsen* or the Disneyland Resort reservation system has any probative value in proving Plaintiffs' claims, which relate solely to the reservation system at Walt Disney World.  *See* Ex. 8 (Filley Dep. Tr.) at 177:17-22 (noting that the reservation system at Walt Disney World "was developed uniquely for the Florida parks" and disagreeing that it "drew upon ... Disneyland"); *see also Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000) (affirming exclusion of "evidence of the existence of the other lawsuits

against" defendant because the lawsuits that plaintiff "sought to introduce involved different decision-makers, different departments, and different hiring processes").

Second, references to *Nielsen* are inadmissible under Rule 403 as overly prejudicial and confusing to the jury.  Given the differences between Disney World and Disneyland's operations, evidence about *Nielsen* "'would lead to a series of mini-trials that would likely confuse and mislead the jury from the task at hand of evaluating plaintiff's claims in this case and result in a waste of time and judicial resources.'"  *A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, 2018 WL 5886663, at *9 (S.D. Fla. Nov. 9, 2018).  Plaintiffs are likely to confuse the jury by introducing a separate set of claims and the settled value of those claims that requires distinguishing between the reservation system Plaintiffs challenge here and a different system that operated with different rules.

Third, any reference to Nielsen's allegations would constitute inadmissible hearsay under Rule 802.  *See Gutierrez v. Galiano Enterprises of Miami, Corp.*, 2019 WL 3302325, at *3 (S.D. Fla. July 23, 2019) ("It is well settled in the Eleventh Circuit that evidence of other lawsuits is generally considered to be inadmissible hearsay."); *see also Amegy Bank Nat'l Ass'n v. DB Priv. Wealth Mortg., Ltd.*, 2014 WL 791505, at *2 (M.D. Fla. Feb. 24, 2014) (excluding "any reference to allegations, petitions, complaints or claims made against [defendant] in any other suits, since such would constitute hearsay"); *ADT LLC*, 2023 WL 3568117, at *11 (excluding evidence of "other lawsuits and investigations" against defendant as "inadmissible hearsay" and prohibiting their introduction "for the non-hearsay purpose of

notice"). The Court should therefore exclude all evidence and testimony about *Nielsen*, including the fact of and any details regarding its settlement.[7]

## VI.    Opposed Motion *in Limine* No. 6

Relatedly, the Court should exclude all evidence and testimony regarding the Disneyland Resort, including its separate annual pass program. Plaintiffs' proposed exhibit list, for example, includes a presentation entitled "Disneyland Rubik Functionality and Rules," which describes the launch of Disneyland's annual pass program. Ex. 21. Plaintiffs also asked WDPR's 30(b)(6) witness several questions about Disneyland. *See, e.g.*, Ex. 8 (Filley Dep. Tr.) at 176:17-177:13. As Plaintiffs' claims pertain only to Disney World, documents and testimony concerning Disneyland have no bearing on their claims and are irrelevant under Rules 401 and 402 and likely to confuse the jury under Rule 403. Moreover, Disneyland Resort and Disney World Resort "operate independently." *Id.* at 177:13. The Disney employees on Plaintiffs' witness list work at and on the Walt Disney World Resort, not the Disneyland Resort, so will be unable to testify about Disneyland or lay a foundation for any documents related to it. *See, e.g.*, *id.* at 174:8-9 ("I have not seen [Ex. 21]. It looks to be a Disneyland document."). Any evidence about Disneyland should be excluded.

---

[7]      The Court should also exclude any reference to the settlement in *Nielsen* under Rule 408. While the Eleventh Circuit has not decided "whether Rule 408 bars evidence of a settlement between one of the parties and a third party" in a different case, *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1307 n.2 (11th Cir. 1985), excluding such evidence serves Rule 408's purpose of encouraging settlement, *see C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 320 (D.D.C. 2008) ("The very policy underlying Rule 408 would be defeated if it did not operate to preclude the admissibility of settlement discussions in a case involving another party or another claim.").

## VII.    Opposed Motion *in Limine* No. 7

The Court should exclude evidence and testimony regarding WDPR's overall financial resources, including its net worth, total revenues, and profits, as well as the financial resources of its parent company, The Walt Disney Company (TWDC). The only purpose of introducing such evidence would be to impermissibly prejudice the jury against WDPR and TWDC as large companies.

None of this financial information is relevant to Plaintiffs' claims under Rules 401 and 402.   Nor are WDPR's or TWDC's overall financial resources relevant to damages, since Plaintiffs' proposed damages methodology is premised on Plaintiffs' and class members' alleged actual damages.   *See, e.g.*, *St. Cyr v. Flying J Inc.*, 2007 WL 2696791, at *2 (M.D. Fla. Sept. 12, 2007) (excluding "[d]efendant's wealth [as] simply not relevant to any of the issues that the factfinder is charged with determining"); *Boneta v. Am. Med. Sys., Inc.*, 2021 WL 6776245, at *5 (S.D. Fla. Oct. 6, 2021) (finding defendant's financial resources irrelevant to determination of compensatory damages and would "become relevant only if this case proceeds to the punitive damages phase"); *El-Ad Residences at Miramar Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, 2011 WL 13174642, at *3 (S.D. Fla. Feb. 23, 2011) (noting, in insurance dispute, "references to [defendant's] size or finances offer no probative value"); *see also Fees v. Am. Fam. Life Ins. Co. of Columbus ("Aflac")*, 2021 WL 2104990, at *7 (N.D. Okla. May 25, 2021) ("Plaintiff may demonstrate defendant's liability to him by showing actual damages sustained by him without reference to defendant's resources.").

Such evidence is also inadmissible under Rule 403 because its limited probative value would be substantially outweighed by the risk of unfair prejudice to WDPR, the risk of confusing the jury, and the resulting waste of trial time. *See Wherevertv, Inc. v. Comcast Cable Commc'ns, LLC,* 2023 WL 2664200, at *7 (M.D. Fla. Mar. 28, 2023) (excluding evidence of defendant's "'financial size and wealth'" because "'any probative value is substantially outweighed by the danger that the jury might set damages based on Defendants' ability to pay rather than on proper evidence of damages'"); *St. Cyr*, 2007 WL 2696791, at *2 (similar); *El-Ad Residences*, 2011 WL 13174642, at *2 (similar); *see also Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, 2019 WL 12536770, at *2 (M.D. Fla. Dec. 20, 2019) ("[I]t has been recognized by courts that evidence of a party's financial net worth can be unfairly prejudicial, particularly to large corporations."). And any evidence about TWDC's finances would grossly overstate and mislead the jury about the actual finances of Defendant WDPR. So evidence about both entities' financial resources should be excluded.

## VIII.   Opposed Motion *in Limine* No. 8

WDPR seeks to exclude Plaintiffs' demonstratives purporting to show classwide damages as the price difference between Platinum and Gold Passes bought by people other than Kelly and Paone. Exs. 22-25.

**CLASS MEMBER DAMAGES**

| Date | Platinum Pass (FL Resident) | Platinum Pass (Tourist) | Platinum Pass (DVC Member) |
|---|---|---|---|
| 6/18/2019 to 2/10/2019 | New: $200.00 | New: $420.00 | New: $200.00 |
| | Renewal: $170.00 | Renewal: $357.00 | Renewal: $170.00 |
| 2/11/2020 until last date sold | New: $180.00 | New: $476.00 | New: $180.00 |
| | Renewal: $153.00 | Renewal: $404.00 | Renewal: $153.00 |

There is no foundation for these demonstratives, such as Ex. 23 above. Plaintiffs themselves cannot lay foundation for it—they do not even know the damages that they supposedly experienced themselves, let alone the putative class's. *See, e.g.*, Ex. 4 (Paone Dep. Tr.) at 74:4-22 ("Q.  What damages are you looking to collect with respect to the pass that you held as of March 2020?  A.  I have no idea.").  They lack personal knowledge of what other annual passholders paid for their passes or of the price premium between various tiers of passes, so they cannot sponsor let alone be cross-examined on the demonstratives' calculations.  Their own experience is insufficient to lay this foundation—for example, the demonstratives misrepresent that all passholders purchased their annual passes for the prices included on them, which passholders did not.  As just one example, Paone herself paid $633.99 for one of her passes that was active during the class period, *see* TAC ¶ 22; Dkt. 85-12, a price that appears nowhere in any of Plaintiffs' demonstratives.  And WDPR's witnesses did not assist in the

creation of these demonstratives and cannot sponsor them or testify as to their basis or accuracy.

What would be required to lay the foundation for these demonstratives is expert opinion, and Plaintiffs have none.  Opinion on the price premium between two products requires expertise.  *See Dapeer v. Neutrogena Corp.*, 2015 WL 10521637, at *10 (S.D. Fla. Dec. 1, 2015) (discussing expert testimony on price premium); *Reilly v. Chipotle Mexican Grill, Inc.*, 2018 WL 1883086, at *6 (S.D. Fla. Jan. 26, 2018) (same).  And even if a damages model relies on simple arithmetic, an expert is still necessary to show why that arithmetic provides the appropriate measure of damages for the class.  *See Nguyen v. Raymond James & Assocs., Inc.*, 2022 WL 4553068, at *13 (M.D. Fla. Aug. 12, 2022) (finding plaintiff's method of calculating damages "unsupported" after excluding damages experts).  If Plaintiffs want to rely on the price difference between Gold Passes and Platinum Passes, they need expert analyses to address the factors contributing to that price difference, such as the value of the 30 days when Platinum Passes were eligible but Gold Passes were not; or the disparate value between passes that were subject to the reservation system for less than a full year—days, weeks, or months less.  These demonstratives are expert opinion in the guise of lay witness testimony or attorney argument, a tactic that courts regularly exclude.  *See Sweet Additions Ingredient Processors, LLC v. Meelunie America, Inc.*, 2023 WL 3600628, at *3 (S.D. Fla. Mar. 20, 2023) (excluding testimony where plaintiff failed to timely disclose an expert and later "'disguise[d]' its expert witness as a lay witness");

*Williams v. Mosaic Fertilizer, LLC*, 2017 WL 5307920, at *2 (M.D. Fla. Jan. 12, 2017) (excluding lay witness damages testimony that lacked foundation and was purely speculative).  The Court should exclude these improper demonstratives.

### IX.    Opposed Motion in *Limine* No. 9

The Court should exclude Plaintiffs' two types of demonstratives allegedly summarizing WDPR's allocation of reservations under the reservation system. Ex. 26.   These demonstratives are likely to mislead the jury and should be prohibited under Rule 403.   *See United States v. Calderon-Fuentes*, 788 Fed. App'x 630, 636 (11th Cir. 2019).

First, Plaintiffs have a set of demonstratives purporting to show that WDPR provided the overwhelming majority of reservations to day guests.  *See* Ex. 26 at 1-4.  For example, Plaintiffs' slide on Disney's Animal Kingdom, *id.* at 1, suggests that WDPR only allocated 8% of reservations for annual passholders:



But that is undisputedly contrary to fact.  These graphs do not actually measure the reservation breakdown as between day guests and annual passholders.  They

measure the percentage of days that WDPR allocated a greater number of reservations to annual passholders or day guests.  A jury will likely misunderstand these confusing slides based on the titles and labels, which refer to "reservation allocations" and not the different metric that the graphs in fact depict.

Additionally, even if Plaintiffs included accurate titles, these slides would still be irrelevant, as the metric depicted does not support Plaintiffs' claims. Plaintiffs hope the jury will assume an inherent connection between Plaintiffs' foundational claim—that Platinum Pass holders experienced blockout dates "when all of the AP reservations were taken, and Disney unilaterally chose not to make additional reservations available," Dkt. 91 at 11—and the metric in the slides, even though no such evidence is or will be in the record.  Plaintiffs failed to offer an expert who could affirm the strained opinion that WDPR should have allocated more reservations to annual passholders than to day ticket holders every day in order to avoid the alleged "blockout dates" for Platinum Pass holders.  Indeed, such an expert opinion would have been unlikely given the far larger pool of day guests visiting from around the world as compared to the annual pass population. Without that unlikely—and certainly unoffered—expert opinion, these slides lack foundation.  Accordingly, these slides should be excluded.

Second, Plaintiffs have a set of slides supposedly illustrating "baskets" of reservation allocations across the parks on various dates and date ranges, Ex. 19 at 7; Ex. 26 at 5-15:



Again, Plaintiffs' visuals fail to faithfully represent the underlying data. For example, in the slide above, Ex. 26 at 7, WDPR allocated slightly *more* reservations to annual passholders than to day guests (120,660 as compared to 119,940) in the period represented, but Plaintiffs make the annual passholder bucket significantly *smaller* than the day guest bucket. On another slide, *id.* at 5, for a time period when WDPR allocated only slightly more reservations to day guests than annual passholders, Plaintiffs make the passholder "basket" misleadingly smaller than the day ticket basket:



Animal Kingdom Park Reservation Allocations

Total Reservation Allocations for the First 59 days of the Class Period

Resort Guests

Day Guests

Annual Passholders



277,940



164,480



154,525

Given the risk of confusion presented by these demonstratives, Plaintiffs should be prohibited from using them at trial. *See, e.g.*, *United States v. Crinel*, 2017 WL 490635, at *8 (E.D. La. Feb. 7, 2017) (excluding demonstrative graph as "misleading").

## CONCLUSION

For these reasons, the Court should grant WDPR's omnibus motion *in limine*.

DATED: June 27, 2024

Respectfully submitted,

*/s/ Alan Schoenfeld*

Dennis P. Waggoner (Fla. Bar 509426)
dennis.waggoner@hwhlaw.com
Joshua C. Webb (Fla. Bar 051679)
Joshua.webb@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E. Kennedy Blvd., Suite 3700
Tampa, FL 33602
Tel: (813) 221-3900
Fax: (813) 221-2900

Alan Schoenfeld (*pro hac vice*)
Ryan M. Chabot (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

Felicia H. Ellsworth (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Brittany R. Warren (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363

*Attorneys for Defendant Walt Disney Parks and Resorts U.S., Inc.*

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Walt Disney Parks and Resorts U.S., Inc. certifies that, on June 26, 2020, they have conferred in good faith by phone with Plaintiffs, who oppose this Motion.

DATED: June 27, 2024          */s/ Alan Schoenfeld*

Alan Schoenfeld

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2024, I caused to be electronically filed the foregoing document using the CM/ECF system, which will serve a notice of electronic filing to all counsel of record.

*/s/ Alan Schoenfeld*

Alan Schoenfeld